BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: **MIDLAND CREDIT MANAGEMENT TCPA LITIGATION** | MDL Docket No.: 11-105 |

**ENCORE CAPITAL GROUP, INC., MIDLAND FUNDING, LLC AND MIDLAND CREDIT MANAGEMENT, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR TRANSFER FOR COORDINATED OR CONSOLIDATED PRE-TRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407**

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND..........................................................2

ARGUMENT..........................................................................................................................4

    I.    Coordination or Consolidation of the Scheduled Actions Under Section 1407 Is Appropriate .........................................................................................4

        A.    The Scheduled Actions Involve Common Factual Allegations ....................5

        B.    Coordination or Consolidation Will Further the Convenience of the Parties and Witnesses..................................................................................6

        C.    Coordination or Consolidation Will Promote the Just and Efficient Conduct of the Scheduled Actions................................................................7

    II.    The Southern District of California Is the Best Forum for Handling Coordinated or Consolidated Pre-trial Proceedings.....................................................9

        A.    The Two Actions Pending in the Southern District of California Were Filed First ..........................................................................................9

        B.    The Two Actions Pending in the Southern District of California Allege the Broadest Classes........................................................................10

        C.    The Southern District of California Is the Most Convenient Forum Available....................................................................................................10

CONCLUSION....................................................................................................................10

\\\LA - 036745/000012 - 488208 v3

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re 7-Eleven Franchise Antitrust Litig.*,
　358 F. Supp. 286 (J.P.M.L. 1973) .................................................................................1

*In re Air Crash Near Peixoto De Azeveda, Brazil on September 29, 2006*,
　493 F. Supp. 2d 1374 (J.P.M.L. 2007) ..........................................................................9

*In re Am. Online, Inc.*,
　162 F. Supp. 2d 690 (J.P.M.L. 2001) ............................................................................6

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*,
　474 F. Supp. 2d 1357 (J.P.M.L. 2007) ..........................................................................7

*In re Charlotte Russe, Inc.*,
　505 F. Supp. 2d 1377 (J.P.M.L. 2007) ..........................................................................7

*In re Delphi Corp. Sec., Derivative, and "ERISA" Litig.*,
　403 F. Supp. 2d 1358 (J.P.M.L. 2005) ..........................................................................8

*In re Foundry Resins Antitrust Litig.*,
　342 F. Supp. 2d 1346 (J.P.M.L. 2004) ..........................................................................7

*In re Neurontin Mktg. & Sales Practices Litig.*,
　342 F. Supp. 2d 1350 (J.P.M.L. 2004) ..........................................................................5

*In re Nissan Motor Corp. Antitrust Litig.*,
　385 F. Supp. 1253 (J.P.M.L. 1974) ...............................................................................8

*In re Novartis Wage and Hour Litig.*,
　460 F. Supp. 2d 1382-83 (J.P.M.L. 2006) .....................................................................6

*In re Novastar Home Mortgage Inc. Mortgage Lending Practices Litig.*,
　368 F. Supp. 2d 1353 (J.P.M.L. 2005) ..........................................................................9

*In re Ortho Evra Prods. Liab. Litig.*,
　422 F. Supp. 2d 1379 (J.P.M.L. 2006) ..........................................................................9

*In re Pharm. Ben. Managers*,
　452 F. Supp. 2d 1352 (J.P.M.L. 2006) ..........................................................................7

*In re Pineapple Antitrust Litig.*,
　342 F. Supp. 2d 1348 (JPML 2004) ............................................................................10

*In re Publ'n Paper Antitrust Litig.*,
　346 F. Supp. 2d 1370 (J.P.M.L. 2004) ..........................................................................5

\\\LA - 036745/000012 - 488208 v3

...

*In re Starmed Health Personnel, Inc., Fair Lab. Standards Act Litig.*,
   317 F. Supp. 2d 1380 (J.P.M.L. 2004)...................................................................................7

*In re Sugar Indus. Antitrust Litig.*,
   395 F. Supp. 1271 (J.P.M.L. 1975)..........................................................................................7

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*,
   844 F. Supp. 1553 (J.P.M.L. 1994)..........................................................................................7

*In re Wireless Tel. Replacement Protec. Programs Litig.*,
   180 F. Supp. 2d 1381 (J.P.M.L. 2002)....................................................................................5

**STATUTES**

28 U.S.C. § 1407............................................................................................................... passim

28 U.S.C. § 1407(a) .................................................................................................................5

28 U.S.C. §1658.......................................................................................................................4

\\\LA - 036745/000012 - 488208 v3

Defendants Encore Capital Group, Inc., Midland Funding, LLC and Midland Credit Management, Inc. (the "Encore Defendants") respectfully submit this Memorandum in Support of their Motion for Transfer for Coordinated or Consolidated Pre-trial Proceedings Pursuant to 28 U.S.C. § 1407.

## INTRODUCTION

The Encore Defendants seek an order from the Judicial Panel on Multidistrict Litigation (the "Panel") transferring four overlapping federal class actions (the "Scheduled Action(s)") that are proceeding in two different districts to the Honorable Michael M. Anello of the United States District Court for the Southern District of California for coordinated or consolidated pre-trial proceedings pursuant to 28 U.S.C. § 1407. The Scheduled Actions contain virtually identical factual allegations and causes of action: they all allege that one or more of the Encore Defendants violated the Telephone Consumer Protection Act ("TCPA") by placing debt collection calls to debtors' cell phones using an "automatic telephone dialing system" without the debtors' consent. Additionally, the Scheduled Actions are all putative class actions in which the class definitions overlap – two of the Scheduled Actions allege nationwide classes covering the same four-year time period, the other two allege Illinois-only classes that are completely subsumed within the putative nationwide classes.

Transfer under Section 1407 is appropriate because the Scheduled Actions involve one or more common questions of fact,[1] the separate adjudication of which would be duplicative and

---

[1] As the Encore Defendants note in their motion, the fact that each purported class action complaint contains virtually identical factual allegations is relevant only to demonstrate "common questions of fact" among the actions for purposes of coordination under 28 U.S.C. § 1407. Whether each action presents questions of fact that are common to all proposed class members and whether those questions predominate for purposes of class certification are two distinct inquiries. *See, e.g., In re 7-Eleven Franchise Antitrust Litig.*, 358 F. Supp. 286, 287 (J.P.M.L. 1973) ("The criteria for a class determination pursuant to Rule 23 of the Federal Rules

1

could potentially result in inconsistent outcomes – for example, inconsistent rulings on class certification or summary judgment. Additionally, transfer will convenience the parties and witnesses, since the overwhelming majority of the documents and witnesses are located in the Southern District of California, and many of the depositions will likely take place there, since the Encore Defendants are located in San Diego. Finally, transfer will promote the just and efficient conduct of the litigation by avoiding inconsistent pre-trial rulings and by allowing any future "tag-along" actions to be included quickly and seamlessly into the MDL proceedings since the facts in all of the putative class actions are nearly identical and the Southern District of California putative classes are nationwide.

For the reasons cited herein, the Encore Defendants respectfully request that the Panel transfer the Scheduled Actions to the Southern District of California, where Judge Anello already presides over the first two Scheduled Actions that were filed.

## FACTUAL AND PROCEDURAL BACKGROUND

*Robinson v. Midland Funding LLC* ("*Robinson*") was filed in the Southern District of California in November 2010, and is pending before Judge Michael M. Anello. The *Robinson* complaint alleges that Midland Funding, LLC placed debt collection calls to the plaintiff's cellular phone, without his consent, using an "automatic telephone dialing system," in violation of the TCPA. Robinson is a putative nationwide class action. The class is defined as "all persons within the United States who received any telephone call from Defendants or their agents to said person's cellular telephone made through the use of any automatic telephone dialing system or with an artificial or prerecorded voice, which call was not made for emergency

---

of Civil Procedure are different from the criteria for transfer pursuant to 28 U.S.C. § 1407."). Nothing contained herein should be construed as an admission that there are common questions of fact or that common issues predominate over individual issues for purposes of class certification.

2

purposes or with the recipient's prior express consent, within the four years prior to the filing of this Complaint." Robinson First Amended Complaint ("FAC") ¶¶ 1, 21. After an unsuccessful motion to dismiss or stay the case, the *Robinson* complaint was amended in April 2011 to add Midland Funding's sister company, Midland Credit Management, Inc., as a defendant, and both defendants answered in June 2011.

*Tovar v. Midland Credit Management* was filed in the Southern District of California in December 2010, and is also pending before Judge Anello. Like the *Robinson* complaint, the *Tovar* complaint alleges that placed debt collection calls to the plaintiff's cellular phone, without his consent, using an "automatic telephone dialing system," in violation of the TCPA. Also like *Robinson*, *Tovar* is a putative nationwide class action. The class is defined as "[a]ll persons within the United States who, on or after October 27, 2006, received a non-emergency telephone call from Midland Credit Management to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such calls during the transaction that resulted in the debt owed." Tovar Cplt. ¶¶ 3, 28. After an unsuccessful motion to dismiss or stay the case, Midland answered the complaint in April 2011. A case management conference is scheduled for August 1, 2011.

*Martin v. Midland Funding LLC* was filed in May 2011 and is before Judge Charles P. Kocoras in the Northern District of Illinois. Like *Robinson* and *Tovar*, the *Martin* complaint alleges that Midland Funding placed debt collection calls to the plaintiff's cellular phone, without his consent, using an "automatic telephone dialing system," in violation of the TCPA. Martin First Amended Complaint ("FAC"), ¶¶ 2-7. *Martin* is a putative class action; the class definition is "[a]ll persons who had Illinois addresses between and including January 1, 2008 and November 24, 2008, whose alleged debt defendant purportedly obtained during that period,

3

whose cell phone, during that time, defendant or some other person on its behalf called using an automatic telephone dialing system or prerecorded or artificial voice, where defendant cannot show that the recipient provided their cellular telephone number to it or, any creditor, for the alleged debt it was collecting, prior to the call(s)." Martin FAC ¶¶ 1, 23.[2]

*Scardina v. Midland Credit Management, Inc., et. al.*, was filed in May 2011 and is before Judge George W. Lindberg in the Northern District of Illinois. The *Scardina* complaint alleges that Midland Credit Management, Inc., acting on behalf of Midland Funding LLC, and Encore Capital Group, Inc. (the corporate parent of the Midland entities), placed debt collection calls to the plaintiff's cellular phone, without his consent, using an "automatic telephone dialing system," in violation of the TCPA. Scardina Cplt., ¶¶ 2, 24-36. *Scardina* is also a putative class action. The *Scardina* class is defined as (a) all persons with cellular numbers in the Illinois area codes ... (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), and on or before a date 20 days following the filing of this action, (c) received automated calls from defendant (d) where defendant's records do not show that the person provided the number to the defendant or the original creditor." Scardina Cplt. ¶¶ 2, 49.

## ARGUMENT

I.  **Coordination or Consolidation of the Scheduled Actions Under Section 1407 Is Appropriate**

The Panel has authority to transfer "civil actions involving one or more common questions of fact [that] are pending in different districts" for consolidated or coordinated pre-trial proceedings "upon [the Panel's] determination that transfers for such proceedings will be for the

---

[2] In addition to the TCPA claim, the *Martin* complaint alleges, on an individual, non-class basis, a violation of the Fair Debt Collection Practices Act ("FDCPA"). Specifically, the complaint alleges that Midland Funding, LLC reported false information about plaintiff's alleged debt to consumer reporting agencies in violation of the FDCPA. Martin FAC ¶¶ 33-36.

4

convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). The Scheduled Actions easily satisfy these statutory criteria.

### A. The Scheduled Actions Involve Common Factual Allegations

When multiple lawsuits allege virtually identical facts and causes of action against one or more common defendants, centralization in a single forum is appropriate. *See, e.g., In re Wireless Tel. Replacement Protec. Programs Litig.*, 180 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (finding transfer appropriate where actions involved common questions of fact relating to similar wireless telephone replacement protection programs "arising out of nearly identical allegations"); *In re Neurontin Mktg. & Sales Practices Litig.*, 342 F. Supp. 2d 1350, 1351 (J.P.M.L. 2004) (involving class action claims against common defendants for allegedly promoting and selling a drug for "off-label" use); *In re Publ'n Paper Antitrust Litig.*, 346 F. Supp. 2d 1370, 1371 (J.P.M.L. 2004) (involving allegations that defendants engaged in anticompetitive conduct).

Here, the four Scheduled Actions involve virtually identical factual allegations. For example:

- All of the plaintiffs allege that they incurred debts that were transferred to the Encore Defendants, and that they were called about their debts on their cellular phones using an "automatic telephone dialing system." Robinson FAC ¶¶ 12, 13; Tovar Cplt. ¶¶ 21; Martin FAC ¶ 4; Scardina Cplt. ¶ 24.

- All of the plaintiffs allege that they did not give the Encore Defendants or their original creditors consent to call their cellular phones. Robinson FAC ¶ 11; Tovar Cplt. ¶¶ 13, 14, 21, 22; Martin Cplt., ¶ 23; Scardina Cplt. ¶ 32.

- All of the plaintiffs purport to represent a class of similarly situated consumers. Robinson FAC ¶ 21; Tovar Cplt. ¶ 28; Martin FAC ¶ 23; Scardina Cplt. ¶ 49. As noted

5

above, the class definitions overlap. Consumers in Illinois could be members of all four classes, and consumers in other states would be members of both the *Robinson* and *Tovar* nationwide classes.

- All of the plaintiffs seek statutory damages of $500-$1500 per call and injunctive relief. Robinson FAC ¶¶ 19, 24; Tovar Cplt. ¶¶ 25, 38-47; Martin FAC ¶¶ 7, 20; Scardina Cplt. ¶¶ 44.

Accordingly, in light of the common factual issues, transfer for consolidated or coordinated proceedings is appropriate.

### B. Coordination or Consolidation Will Further the Convenience of the Parties and Witnesses

Coordination and/or consolidation is appropriate when it would convenience the parties and witnesses, thereby conserving the parties' resources. *See, e.g.*, *In re Novartis Wage and Hour Litig.*, 460 F. Supp. 2d 1382-83 (J.P.M.L. 2006) (finding centralization warranted to serve the convenience of parties and witnesses to conserve their resources); *In re Am. Online, Inc.*, 162 F. Supp. 2d 690, 691 (J.P.M.L. 2001) (same).

Here, coordination or consolidation of the Scheduled Actions will greatly convenience the parties as a whole by centralizing management of the litigation in one forum. Currently, the Scheduled Actions are in California and Illinois, and they are likely to have different pre-trial schedules. Centralization in one district would eliminate the need to track and participate in multiple pre-trial conferences and other time-consuming proceedings. It also will reduce travel to the parties and their respective witnesses. In particular, centralization in the Southern District of California will be convenient and efficient because the Encore Defendants are located in San Diego, so the overwhelming majority of documents and witnesses are in the Southern District of California.

6

In addition, consolidation is favored to eliminate duplicative discovery. *See In re Foundry Resins Antitrust Litig.*, 342 F. Supp. 2d 1346, 1347 (J.P.M.L. 2004) (centralization and consolidation favored to eliminate duplicative discovery); *In re Starmed Health Personnel, Inc., Fair Lab. Standards Act Litig.*, 317 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004) (same). Here, since all four cases involve the same factual allegations and causes of action, discovery will be completely duplicative, with the same documents being produced and the same witnesses being deposed in four separate actions. Consolidated discovery will avoid the need for such duplication of efforts by providing a global schedule for written discovery and depositions.

### C. Coordination or Consolidation Will Promote the Just and Efficient Conduct of the Scheduled Actions

The desire to avoid inconsistent rulings on pre-trial issues such as class certification weighs strongly in favor of centralizing the Scheduled Actions in a single forum. *See, e.g., In re Charlotte Russe, Inc.*, 505 F. Supp. 2d 1377, 1378 (J.P.M.L. 2007) ("Centralization under Section 1407 will eliminate duplicative discovery; prevent inconsistent pretrial rulings, especially with respect to class certification; and conserve the resources of the parties, their counsel and the judiciary."); *In re Pharm. Ben. Managers*, 452 F. Supp. 2d 1352, 1353 (J.P.M.L. 2006) (same); *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 474 F. Supp. 2d 1357, 1358 (J.P.M.L. 2007) (same); *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 844 F. Supp. 1553, 1554 (J.P.M.L. 1994) (finding centralization appropriate in order to "prevent inconsistent pretrial rulings (especially with respect to class certifications and summary judgments)"); *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) ("We have consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determinations exists.").

\\\LA - 036745/000012 - 488208 v3

Here, without coordination or consolidation, the parties run the risk of inconsistent rulings in the Scheduled Actions. Because the classes all overlap, there is a risk of inconsistent rulings on class certification. Moreover, there is also a risk of inconsistent rulings on summary judgment. Such inconsistent or conflicting pre-trial rulings would be highly problematic to the just and efficient conduct of the Scheduled Actions.

The fact that the plaintiffs in *Martin* and *Scardina* seek to certify Illinois classes, as opposed to the nationwide putative classes in *Tovar* and *Robinson*, does not preclude coordination or consolidation; indeed, the Panel has recognized that the presence of a nationwide class action does not bar transfer but instead promotes "the salutary effect of ensuring consistent application of Rule 23." *In re Nissan Motor Corp. Antitrust Litig.*, 385 F. Supp. 1253, 1255 (J.P.M.L. 1974) (transferring tag-along putative class actions even though they were geographically distinct from other actions already pending in transferee district because of the common facts and nationwide issues. Since the action involved an alleged nationwide conspiracy in violation of antitrust laws, the Panel found that discovery would involve common issues to all actions, including local dealers alleged to have fixed prices, and that transferring the actions would prevent duplication and promote efficiency).

Finally, to the extent that each action contains some individualized factual inquiries, coordination or consolidation is not prejudicial, since transfer "has the salutary effect of fostering a pretrial program that[] allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues." *In re Delphi Corp. Sec., Derivative, and "ERISA" Litig.*, 403 F. Supp. 2d 1358, 1360 (J.P.M.L. 2005) (citation omitted). As discussed above, transfer and coordination or consolidation will prevent the duplication of written discovery and depositions, conserving the resources of the parties, their counsel and the

judiciary. *See, e.g., In re Ortho Evra Prods. Liab. Litig.*, 422 F. Supp. 2d 1379, 1381 (J.P.M.L. 2006).

In summary, transfer of the Scheduled Actions to a single forum will promote an efficient judicial handling of the cases and avoid the possibility of inconsistent outcomes, particularly on the issue of class certification. Centralization will also streamline discovery schedules, avoid costly duplication across multiple federal forums and optimize the scheduling of witnesses. Moreover, because all four of the Scheduled Actions are in the early stages of discovery, the benefits of coordination can be reaped with minimal transaction costs.

## II.   The Southern District of California Is the Best Forum for Handling Coordinated or Consolidated Pre-trial Proceedings

The Panel should transfer the Scheduled Actions to the Southern District of California for pre-trial proceedings before Judge Anello. Judge Anello currently presides over two of the four Scheduled Actions. The cases pending before Judge Anello were the first filed, and they have the broadest class definitions. The other two Scheduled Actions are currently before different judges in the Northern District of Illinois and the class definitions are substantially narrower.

### A.   The Two Actions Pending in the Southern District of California Were Filed First

This Panel has concluded that the district where actions were first filed is generally the more appropriate forum. *See, e.g., In re Air Crash Near Peixoto De Azeveda, Brazil on September 29, 2006*, 493 F. Supp. 2d 1374, 1376 (J.P.M.L. 2007) (transferring to district where "[t]he first two filed actions are pending" and where "they are more procedurally advanced than the actions pending elsewhere"); *see also In re Novastar Home Mortgage Inc. Mortgage Lending Practices Litig.*, 368 F. Supp. 2d 1353, 1354 (J.P.M.L. 2005) (in selecting between two forums, choosing location of first filed action when that action was proceeding well and has capacity to

9

handle litigation). Here, because the *Robinson* and *Tovar* matters were the first filed, the Southern District of California is the most appropriate forum.

### B. The Two Actions Pending in the Southern District of California Allege The Broadest Classes

As noted above, the Illinois-only classes alleged in *Martin* and *Scardina* are entirely subsumed within the nationwide classes alleged in *Robinson* and *Tovar*. Because the cases with the broadest class definitions are pending in Southern District of California, the Southern District of California is the most appropriate forum for centralization. *See In re Pineapple Antitrust Litig.*, 342 F. Supp. 2d 1348, 1349 (JPML 2004) (transferring class actions for coordinated proceedings to the court where the alleged class encompassed the classes pled in the transferred cases).

### C. The Southern District of California Is the Most Convenient Forum Available

The first two Scheduled Actions were filed in the Southern District of California, the Encore Defendants are located in this district and many of the witnesses and much of the evidence are also in the Southern District of California. The plaintiffs in the first two Scheduled Actions are also located in Southern California. Accordingly, centralizing the litigation in the Southern District of California is the most practical for all the parties.

### CONCLUSION

Centralized management of the four Encore TCPA class actions currently pending in federal court will convenience the parties, consolidate overlapping classes, lead to consistent rulings and promote a more efficient handling of pre-trial proceedings. Accordingly, the Encore Defendants respectfully request that the Judicial Panel on Multidistrict Litigation transfer the Scheduled Actions pending in the Northern District of Illinois to the Southern District of

\\\LA - 036745/000012 - 488208 v3

California before Judge Anello for coordinated or consolidated pre-trial proceedings pursuant to 28 U.S.C. § 1407.

Respectfully submitted this 28th day of July, 2011,

HOGAN LOVELLS US LLP

By: /s/ Amy M. Gallegos
Richard L. Stone
Amy M. Gallegos
Attorneys for Defendant
Encore Capital Group, Inc.
Midland Funding, LLC
Midland Credit Management, Inc.

HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
amy.gallegos@hogan.lovells.com